UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AT&T CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:05-0928 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| GREATLODGE.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the plaintiff, AT&T Corporation ("AT&T") (Docket No. 37), to which the defendant, GreatLodge.com, Incorporated ("GreatLodge") has responded (Docket No. 42), and the plaintiff has replied (Docket No. 44). For the reasons discussed herein, the plaintiff's motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

This dispute arises from a contract entered into by the parties on approximately July 3, 2003.[1] Under the terms of this agreement, the plaintiff was to furnish clients of the defendant with "dial-up" access to the Internet. The defendant sought out this access after winning its bid to develop, operate, and maintain "a single comprehensive electronic license and boat

---

[1] Unless otherwise noted, the facts have been drawn from the defendant's Response to AT&T Corp.'s Statement of Material Facts in Support of Summary Judgment (Docket No. 43) and from its Memorandum in Opposition to AT&T Corp.'s Motion for Summary Judgment (Docket No. 42).

1

registration system for the [Louisiana Department of Wildlife and Fisheries ("LDWF")]." (*See* Docket No. 42 at 3.) Under the terms of its agreement with the LDWF, the defendant was to provide retail locations throughout Louisiana with access to its website, through which the retailers could access licensing information and issue hunting and fishing licenses to their customers.

According to the defendant, it participated in negotiations with the plaintiff prior to submitting its proposal to the LDWF in order to determine whether the plaintiff would be able to meet its requirements. In these negotiations, the defendant claims that the plaintiff confirmed that it would be able to provide several services that were critical to the defendant, among them an idle disconnect service that was supposed to disconnect retailers from the Internet after five minutes of idle time, thus ensuring that the defendant was not paying for usage time caused by a retailer's failure to log out of the defendant's system, and a "fenced Internet option" that was intended to prohibit retailers' use of the Internet services supplied by the defendant for any reason other than the sale of hunting and fishing licenses.

In September 2003, soon after the opening of dove hunting season and the beginning of the defendant's services for the LDWF, the defendant received information from the plaintiff that indicated that the Internet connection times by the retailers, and therefore, the charges to the defendant, "were grossly out of line with GreatLodge's projections and with the actual number of license transactions which had occurred during September 2003." (*See id.* at 6.) According to the defendant, these usage times revealed the failure of either the idle disconnect service or the fenced option or both.

Thus began a dispute between the parties that lasted more than one year. Immediately after receiving information about the increased usage times, the defendant inquired of the
2

plaintiff how their agreement could be modified to address these increased usage times. The plaintiff suggested options to which the defendant was not amenable, and the defendant countered with new proposals to which the plaintiff did not respond. As months passed, the increased usage by the retailers worsened, and the plaintiff advised the defendant that it needed to pay its outstanding invoices. In January 2004, the defendant paid $17,522.50 to the plaintiff but submitted a dispute concerning the overall charges. The plaintiff now brings a claim for the remaining charges, and the defendant, through its counterclaims, demands an accounting from the plaintiff and accuses it of willful misconduct.

## **ANALYSIS**

The plaintiff moves for summary judgment on its claim as well as the defendant's two counterclaims. Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether

3

there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's motion.

**I.     The plaintiff's motion for summary judgment on its claim that the defendant breached the parties' contract by failing to pay the total amount due for the plaintiff's services will be denied.**

The plaintiff claims that the defendant breached the parties' contract, *i.e.*, the Master

4

Agreement, when it failed to fully pay for the services that the plaintiff provided to it. (*See* Docket No. 38 at 3.) Specifically, the plaintiff asserts that the defendant "paid for some, but not all of the [s]ervices and still owes AT&T $244,222.27 . . . ." (*Id.* at 4.) The defendant acknowledges that the plaintiff charged it $281,802.80 for its services and that it has, so far, paid much less than the total amount due. (*See* Docket No. 42 at 12.) The defendant denies that it owes the plaintiff this full sum, however, because in its view, the plaintiff failed to fulfill its obligations under the parties' contract. (*See* Docket No. 42 at 13.)

### A. For the purposes of this motion, the plaintiff will not be equitably estopped from attempting to recoup the money allegedly owed to it by the defendant.

The defendant seems to claim that the plaintiff should be equitably estopped from seeking its total fees for September and October 2003 because the defendant relied on the plaintiff's alleged representations during their billing dispute that any new contract between the parties would continue to allow for the idle disconnect service. (*See* Docket No. 42 at 17.) In furtherance of this argument, the defendant asserts that it "relied upon AT&T's commitment to revise its rates" and thus did not pursue new agreements with other Internet service providers who allegedly could have offered them cheaper rates. (*See id.* at 18.)

In response to this argument, the plaintiff argues, based on a definition of equitable estoppel apparently found in Black's Law Dictionary and originally cited by the defendant, that the defendant has failed to demonstrate that equitable estoppel is appropriate in this case. Specifically, it maintains that it did not falsely state that it could provide the defendant with a new contract, but rather that it merely noted that it would "check on the status of [the defendant's] contract and let [it] know." (*See* Docket No. 44 at 5.) It also notes that the defendant did not change its position, *i.e.*, remain in a contractual relationship with the plaintiff,

5

because of the plaintiff's representations. Rather, the plaintiff points to one of the defendant's own submissions that, according to the plaintiff, indicates that the defendant remained in the contract for reasons beyond any representation made by the plaintiff. (*See id.* at 6 (citing Docket No. 42-5 at 17 ("The thing is that [the defendant] can get an unlimited [number] of hours for less than $20 elsewhere, but the reinstall issue is horrendous and will cause further vendor ill will)); *see also* Docket No. 24-1 ¶ 21(h) (acknowledging that, had the defendant removed the plaintiff as its telecommunications provider, it would have caused "further irreparable damages to [the defendant's] reputation and termination of the LDWF contract").)

Under New York law, a party that seeks the protection of equitable estoppel must establish, as to the party it seeks to estop, the following: (1) conduct that amounts to a false representation or concealment of material facts and that is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by the other party; (3) actual or constructive knowledge of the real facts. *See Brelsford v. United States Auto. Assoc.*, 734 N.Y.S.2d 707, 709 (N.Y. App. Div. 2001). The party seeking to establish equitable estoppel must also demonstrate its own (1) lack of knowledge and means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party it seeks to estop; and (3) action based thereon of such a character as to change its position prejudicially. *Id.*

While the defendant does not fit its arguments into this framework, the court finds that–for the purposes of this summary judgment motion only–the record demonstrates its failure to establish at least one element of each of these tests. In particular, the defendant has not

6

demonstrated that the plaintiff, through its emails about a potential new contract, falsely represented or concealed material facts in a manner that was inconsistent with the facts that it later tried to assert. In addition, the defendant has not shown that it prejudicially changed its position based on the plaintiff's statements. As such, the defendant cannot use principles of equitable estoppel at this stage of the proceedings to bar the plaintiff from attempting to recoup the money allegedly owed to it by the defendant.

### B. Genuine issues of material fact exist as to the plaintiff's motion for summary judgment on its breach of contract claim.

As indicated in the parties' contract, New York law governs this dispute. (*See* Docket No. 38-1 ¶ 13.5 ("The construction, interpretation and performance of this Agreement shall be governed by the substantive law of the State of New York . . . .").) Under New York law, an action for a breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) a breach of the contract by the other party; and (4) damages. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d. Cir. 1998). The plaintiff has not established the absence of a genuine issue of material fact as to each of these elements.

In particular, questions of material fact remain as to whether the plaintiff performed the contract. The defendant argues that the plaintiff did not fulfill its obligations under the contract because, among other things, it "failed to include . . . a five minute idle disconnect [and] a fenced option . . . ." (Docket No. 43 ¶ 12.) As noted by the defendant, the plaintiff does not appear to dispute the defendant's assertion that the plaintiff agreed to provide these services. (*See id.* at 15.) Rather, the plaintiff argues that any failure of the idle disconnect program was due to errors in the defendant's "script program," which the defendant used to "connect and disconnect the dialer." (*See* Docket No. 38 at 5.) The plaintiff also maintains that, pursuant to the parties'

7

agreement, the defendant was responsible for ensuring that all of its equipment was compatible with the plaintiff's services and that "[w]ithout additional documentation from GreatLodge that this problem occurred only due to equipment provided by AT&T, no fault can be allocated to AT&T for such failure in service to render any additional credits to GreatLodge under the agreement." (*Id.* at 7.) The plaintiff does not specifically address the purported failure of the fenced option, other than to note that it "was able to determine that the billing was accurate for excessive use time." (*See id.* at 6.)

The defendant disputes the plaintiff's arguments that the failure of the idle disconnect program was due to the defendant's equipment. Specifically, it notes that the program that it used to connect and disconnect to its retailers was identical for each retailer. (*See* Docket No. 42 at 11.) As such, it explains, the plaintiff's arguments about the failure of the defendant's equipment "would only be viable to the extent that the Idle Disconnect failed with respect to all retailers," which it did not. (*Id.* at 16.) The defendant has also presented evidence, in the form of a sampling of its retailers' connection times, that the Internet fence option may not have been functional. (*See id.* at 7-8.) Although the Internet connection time necessary for a retailer to issue a license was anticipated to be between five and fifteen minutes, the defendant's evidence reveals that a number of retailers averaged connection times of four hours or more. (*See id.* at 4, 8.)

Thus, genuine issues of material fact exist as to whether the plaintiff fulfilled its promise to provide these services, such as would allow it to recover for the defendant's alleged breach. Accordingly, the plaintiff's motion for summary judgment on this claim will be denied.

The court now turns to the plaintiff's motion for summary judgment as to the defendant's

two counterclaims. The defendant did not address its counterclaims in its Memorandum in Opposition to the plaintiff's Motion for Summary Judgment, which may indicate its intent to abandon them. The court may not, however, grant the plaintiff's motion solely on the grounds that the defendant has failed to address its counterclaims. *See Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998).

> As the Sixth Circuit has stated:
>
> [A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden . . . . The federal rules require that the party filing a motion for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact.

*Id.* (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). The court, therefore, will consider whether the plaintiff has met its burden under the summary judgment standard with respect to each of the defendant's two counterclaims.

II.   **No genuine issue of material fact exists as to the defendant's counterclaim for "Breach of Contract and Demand for Accounting."**

With its first counterclaim, the defendant demands a "detailed accounting from AT&T for the life of its agreements with GreatLodge including (a) all payments made by GreatLodge to AT&T and the application of such payments to AT&T's bills for services provided to GreatLodge and (b) monthly connection times for each [r]etail [l]ocation including any available evidence of failed connection attempts, improper disconnections, connection and page load speeds and an adjustment to the collection times for each [r]etail [l]ocation in light of AT&T's failure to implement a five minute idle disconnect time." (Docket No. 24 ¶ 27.)

9

The plaintiff has moved for summary judgment on this claim, asserting that the defendant has not demonstrated grounds for a contractual or equitable right to an accounting. (*See* Docket No. 38 at 8.) It maintains that the defendant did not seek discovery on this issue, nor did it request a Rule 30(b)(6) deposition through which it might have obtained such information. (*See id.* at 9.) It also asserts that it has already produced an account summary for the defendant and that, "after further inquiry by AT&T, AT&T has no ability to create additional reports or [documents] related . . . to non-connects, or failure to connect on this account." (*Id.*) As noted above, the defendant has not responded to the plaintiff's motion for summary judgment on this counterclaim.

A party seeking to obtain an accounting of the sort that the defendant pursues here must allege either a contractual or equitable basis for doing so. As noted by the plaintiff, the defendant indicates no contractual basis for an accounting. (*See id.*) In order to establish its right to an equitable accounting under New York law, the defendant must demonstrate that it has a fiduciary or confidential relationship with the plaintiff that entitles it to such. *See LoGerfo v. Trs. of Columbia Univ.*, 827 N.Y.S.2d 166, 169 (N.Y. App. Div. 2006) ("The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest.").

Under New York law, a party seeking to demonstrate the existence of such a relationship can do so by establishing, among other factors, one of the following: (1) that it entrusted money or property to the other party with respect to which the other party is bound to reveal its dealings; (2) that it assigned accounts receivable to the other party as security for advances; or

10

(3) that the other party occupies and controls property of which both parties share ownership. *See* 1 N.Y. Jur. 2d *Accounts and Accounting* § 34 (2007). Notably, "[t]he mere necessity of an accounting in order for plaintiff to ascertain the amount due on a contract with the defendant is insufficient to justify an equitable action of accounting." *Id.* (citing *Klonick v. Equitable Life Assur. Soc.*, 353 N.Y.S.2d 372, 374 (N.Y. App. Div. 1947)).

Thus, because the defendant appears to seek an accounting for this very purpose and because it has not demonstrated the existence of any of the factors required for an equitable accounting, no genuine issues of material fact exist with respect to the defendant's counterclaim demands for an accounting. As such, the plaintiff's motion for summary judgment as to this issue will be granted.

### III. A genuine issue of material fact exists as to the defendant's counterclaim for "Breach of Contract and Willful Misconduct."

Finally, the defendant asserts a counterclaim for breach of contract and willful misconduct. (*See* Docket No. 24 ¶¶ 28-31.) The plaintiff argues that the court should grant its motion for summary judgment on this counterclaim because "GreatLodge has only alleged damages that are expressly barred by the [parties'] Agreement." (*See* Docket No. 38 at 10.) In particular, the plaintiff asserts that the agreement precludes the defendant from bringing a claim for lost profits or reputation damages. (*See id.*) It further argues that such damages "are the only damages GreatLodge seeks in its counterclaims." (*Id.*)

While the defendant does seek reputation and lost-profit damages via its counterclaim, these damages appear within a list of other damages also sought. (*See* Docket No. 24 ¶ 31 (listing loss of investment costs, loss of future contracts, and monetary loss caused by the

11

defendant's attempts to address its concerns about the plaintiff's services).) Further, an examination of the parties' agreement reveals that it expressly allows for "any damages arising from the willful misconduct of a party," although it does not define "willful misconduct."[2] (*See* Docket No. 38-5 at 3.) Thus, a genuine issue of material fact exists as to whether the defendant's counterclaim is barred by the limitation-of-liability provision in the parties' agreement.

While neither party offers any substantive argument as to the propriety of summary judgment on this claim, the court will briefly address this issue here. New York courts have defined willful misconduct as "the intentional performance of an act with knowledge that the performance of that act will probably result in injury or damage, or . . . the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences . . . . [or] the intentional omission of some act, with knowledge that such omission will probably result in damage or injury, or the intentional omission of some act in a manner from which could be implied reckless disregard of the probable consequences of the omission." *See AT&T v. New York City Human Res. Admin*, 833 F. Supp. 962, 974 (S.D.N.Y. 1993).

Faced with an earlier claim of willful misconduct against AT&T, the United States

---

[2]Indeed, such an allowance is required under New York law. *See Gargano v. Cooke Props., Inc.*, No. 87 CIV. 7311, 1989 WL 126066, at *3 (S.D.N.Y. 1989) (unpublished) ("A provision that limits the type of relief that may be sought for breach of an agreement generally is enforceable as an expression of the intention of the contractual parties. Damage limitation or waiver clauses, as a prime example of such provisions, are routinely enforced against parties who have consented to their inclusion in an agreement . . . . Such a clause may not be invoked, however, to insulate a party from liability for the consequences of willful misconduct in performing its obligations under the contract . . . . This legal exception to parties' freedom to contract, thought necessary to uphold accepted notions of public morality and policy, is firmly embedded within New York's law of contracts.") (internal citations omitted).

District Court for the Southern District of New York granted AT&T's Motion for Summary Judgment because "[t]he evidence before [that court], *without exception*, indicate[d] that AT&T took deliberate and appropriate actions to rectify [an error that allowed unauthorized users to take advantage of phone service paid for by the defendant], not to cause or perpetuate damage to the defendant." *See id.* at 975 (emphasis in original). The court contrasted its case with one faced by the United States District Court for the District of Maine. *See id.* at 976 (citing *MCI Telecomm. Corp. v. Mgmt. Solutions, Inc.,* 798 F. Supp. 50 (D. Me. 1992)). In *MCI*, the court denied MCI's Motion for Summary Judgment on a claim of willful misconduct where MCI had advised its client "that its problem with respect to the unauthorized charges 'was being' or 'would be taken care of' and then failed to take affirmative action to follow up on those representations." *See AT&T*, 833 F. Supp. at 976 (quoting *MCI Telecomm. Corp.,* 798 F. Supp. at 50). The Maine court then held that there existed a genuine issue of material fact as to whether MCI's affirmative representations that it would correct the problem and its subsequent failure to follow up on those representations constituted willful misconduct. *See MCI Telecomm. Corp.,* 798 F. Supp. at 50.

Drawing all inferences in favor of the defendant as the non-moving party, as the court is bound to do here, the court finds the case at hand to be more like *MCI Telecomm. Corp.* than it is like *AT&T*. The defendant alleges that the plaintiff, like MCI in *MCI*, (1) failed to correct the service deficiencies complained of by the defendant despite "clear evidence" of them; (2) unreasonably delayed the defendant's billing dispute for a period of time in excess of one year; and (3) intentionally delayed fulfilling its obligations to the defendant despite the fact that it knew that the defendant could not reasonably remove the plaintiff as its telecommunications

13

provider.  (*See* Docket No. 24 ¶ 31.)  The plaintiff, in its brief arguments about this counterclaim, has not demonstrated the absence of genuine issues of material fact as to these allegations.  Accordingly, its motion for summary judgment on this counterclaim will be denied.

## CONCLUSION

The plaintiff has failed to demonstrate the absence of genuine issues of material fact as to its claim for breach of contract and the defendant's counterclaim for willful misconduct.  As such, the plaintiff's motion for summary judgment on these claims will be denied.  The plaintiff has, however, demonstrated that no genuine issues of material fact exist as to the defendant's counterclaim for an accounting.  As such, the plaintiff's motion for summary judgment on this claim will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge